CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 30 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRENCE LAVENDER, | ) |
| | ) Civil Action No. 7:11cv00135 |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| CITY OF ROANOKE SHERIFF'S | ) By: Samuel G. Wilson |
| OFFICE, ET AL., | ) United States District Judge |
| | ) |
| Defendants. | ) |

This is an action by plaintiff, Terrence Lavender, pursuant to 42 U.S.C. § 1983, with supplemental jurisdiction asserted under 28 U.S.C. § 1367 over state law assault and battery claims, against the City of Roanoke Sheriff's Office; the Roanoke City Sheriff, Octavia L. Johnson; and an unspecified number of deputies identified only as "John Does," in their individual and official capacities, arising out of the alleged use of excessive force against him while he was a pretrial detainee at the Roanoke City Jail. Johnson and the Sheriff's Office have moved to dismiss because Lavender failed to serve his complaint within the time limit for service provided by Rule 4(m) of the Federal Rules of Civil Procedure and to comply with the court's local rules and alternatively for failing on multiple grounds to state a plausible claim for relief. The court finds excusable neglect in Lavender's untimely service of the Sheriff and the Sheriff's Office but finds that Lavender's complaint fails to raise a plausible § 1983 claim for relief against them. The court holds under advisement the named defendants' motion to dismiss Lavender's state law claims because it appears that the statue limitations may have run as to all of Lavender's claims against the yet unnamed "John Doe" defendants. If it has, there will be no pending federal claims and the court will decline to exercise supplemental jurisdiction over

1

Lavender's remaining, purely state law claims against Johnson in her official or individual capacity.

### I.

On March 18, 2011, Lavender filed his complaint against the Sheriff's Office, Johnson, and an unspecified number of "John Doe" defendants, individually and in their official capacities, alleging that on March 21, 2009, one of the John Doe defendants threw him into a table resulting in the loss of a tooth and a laceration to his head and that he was stripped of his clothes for an unspecified period of time until his arraignment. He asserts three claims: an excessive force claim for violation of his rights under the Fourteenth Amendment, a conspiracy to violate his civil rights in violation of the Fourteenth Amendment, and a state law assault and battery claim.

As to the excessive force claim, Lavender alleges that Johnson and the Sheriff's Office "were personally involved in and responsible for the excessive force used against [him]" because they "created a policy and custom, and they allowed the continuance of a policy and custom, under which pretrial detainees and individuals brought to the Roanoke City Jail, would be subjected to the excessive and unreasonable force; and [they] were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein."

As to the conspiracy claim, Lavender alleges generally that:

> All defendants took some overt act in furtherance of the conspiracy, and all defendants agreed to act together to violate Mr. Lavender's civil rights. Namely, each defendant either actually participated in the use of excessive force, or witnessed the excessive force but failed to intervene, or acquiesced in the actions taken or covered up the actions taken when the matter was investigated after Mr. Lavender filed a formal complaint regarding the deputies' actions. All defendants agreed to alter the deputy defendants' version of the event to cover up the assault, to include false information in the report of the investigation, to conduct an inadequate investigation of the March 21, 2009, incident, and to refuse

to release the investigative report associated with a March 21, 2009, incident to Mr. Lavender.

As to Lavender's assault and battery claim, Lavender alleges that the John Doe defendants "repeatedly touched Mr. Lavender in a vicious, rude, insulting, brutal, unwanted, and offensive manner" and without provocation threw him into a table. He describes this touching as unsolicited, unwarranted, and inappropriate and not consented to, excused, or justified. In addition, he alleges that because the John Doe defendants "were acting within the scope of their employment," their "torturous conduct" is imputable to Johnson and the Sheriff's office.

On July 6, 2011, the clerk's office sent notice to Lavender's counsel that he had "until July 21, 2011 to notify the clerk . . . that service [had] been accomplished [or] the defendants [would] be dismissed from the suit without prejudice by order of this Court." On July 21, 2011, the summonses and complaint were served on Johnson, and on that date returns were filed with the clerk noting that service had been accomplished on Johnson and the Sheriff's Office.

The Sheriff's Office and Johnson filed their joint motion to dismiss with supporting memoranda on August 10, 2011. They argued that Lavender had missed the Rule 4 prescribed 120-day deadline for service by five days. The Sheriff's Office argued additionally that it was not sufficiently served, though Lavender had served the summons and complaint on Johnson individually and in her official capacity as Roanoke City Sheriff. Johnson and the Sheriff's Office also moved to dismiss on various other procedural and substantive grounds.

Lavender failed to respond to the named defendants' motion to dismiss pursuant to Local Rule 11(c)(1), which provides in pertinent part that unless otherwise directed by the court, the party opposing a properly supported motion must file a responsive brief and such supporting documents as are appropriate within fourteen days after service. On August 31, 2011, the named defendants moved to dismiss because Lavender had failed to respond. Lavender eventually

3

responded on October 3, 2011, and his response offered no justification for having failed to serve within 120 days or for having failed to file a brief within fourteen days of defendants' initial August 10, 2011 motion to dismiss or even within fourteen days of defendant's follow-up motion. The named defendants replied, objecting to Lavender's lack of timeliness and reiterating numerous grounds allegedly supporting their motion.

The court heard argument on the named defendants' motion to dismiss on November 4, 2011, and Lavender's counsel explained for the first time that he had misread the clerk's notice to indicate that he had until July 21, 2011 to serve his complaint, and he served it on that date. He was candid and offered no explanation or excuse for having failed to file briefs in opposition within fourteen days as Local Rule 11 requires. Lavender's counsel also explained at the hearing that he was attempting to hold Johnson liable because after she became aware of the March 21, 2009, incident she allegedly failed to "follow-through," that is, "properly investigate" the incident. He also noted that he was seeking to hold Johnson liable based on her "pattern of conduct," though he did not have "specific facts."

## II.

The named defendants have moved to dismiss Lavender's complaint as to them because he failed to serve them within 120 days as Rule 4(m) of the Federal Rules of Civil Procedure requires or to show "good cause" for the failure. The court finds that Lavender is alternatively permitted to show "excusable neglect" under Rule 6(b) of the Federal Rules (or for that matter under Rule 4), and that counsel's misreading of the clerk's 120-day notice qualifies as excusable neglect. Accordingly, the court denies the named defendants' Rule 4(m) motion to dismiss.[1]

Rule 4(m) provides in part that:

---

[1] For reasons stated later, the John Doe defendants stand on different procedural footing. The claims against them may be futile due to the statute of limitations.

4

> [i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.
>
> Rule 6(b)(1) provides in part that:
> When an act may or must be done within a specified time, the court may for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.

Under the Rule 4(m) the court must extend the time for service if good cause is shown, "while if good cause is not shown, the court has a choice between dismissing the suit and giving the plaintiff more time." United States v. McLaughlin, 470 F.3d 698, 700 (7th Cir. 2006). "Some courts state that when . . . an extension is sought after the 120-day deadline has passed, the plaintiff must show 'excusable neglect,' as that is the standard laid down by Rule 6(b)(2) for motions 'made after the expiration of the specified period' for making the motion." Id. Others disagree and conclude instead that Rule 4(m) authorizes the district court, in a case in which the 120 days have elapsed, to direct that service be effected within a specified time and then only if the plaintiff failed to meet the new deadline and filed a motion for extension of time would Rule 6(b)(2)'s "excusable neglect" be required. Id.

The court finds that Lavender's failure to serve is excusable, even assuming that Rule 6's excusable neglect standard applies. "Neglect is excusable . . . if there is a reason, which needn't be a compelling reason, to overlook it." Id. Here, Lavender's counsel read the clerk's notice to read that he had until July 21, 2011, to serve his complaint, rather than simply as notice that he must demonstrate proper service by that date. Though he is responsible for knowing what Rule 4(m) requires, his inadvertence in this respect is understandable and excusable. Accordingly, the

5

court will deny the named defendants' motion to dismiss based on Lavender's failure to serve them within 120 days of filing of his complaint.[2]

## III.

The named defendants have moved to dismiss Lavender's federal claims on various other grounds. The court finds it unnecessary to address all of those grounds, because it finds that Lavender has failed to plead facts sufficient to support the claim that Johnson is liable under § 1983, either in her individual or official capacity, for the actions of the "John Doe" defendants. In so finding, the court assumes that the governmental entity Johnson serves (despite the state's own categorization of that governmental entity) and the functions she is carrying out in operating a local jail are properly considered to be municipal in character. Whether this is true is far from clear, has not been fully briefed, and is only assumed hypothetically.[3]

---

[2] The Sheriff's Office also appears to argue that it was not sufficiently served, though the summons and complaint were served on Johnson individually and in her official capacity as Roanoke City Sheriff. However, a claim against an official in her official capacity is tantamount to a suit against the government entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Consequently, to the extent that the "Roanoke City Sheriff's Office" is otherwise an appropriate entity for suit, suits against that office and the Sheriff in her official capacity are redundant. Thus, service on Johnson in her official capacity suffices as service on the Sheriff's Office.

[3] The term person under § 1983 does not include a state, state agency, or state official sued in her official capacity for damages, Will v. Michigan Department of State Police, 491 U.S. 58 (1989), and there is considerable authority holding that the 11th Amendment precludes § 1983 official capacity suits against Virginia sheriffs because they are state, not local, officials. See Snead v. Alleghany Sheriff Dep't, No. 7:09cv00198, 2009 WL 2003399, *1 (W.D. Va. July 7, 2009) (finding that "[i]n Virginia, federal district courts have consistently held that a sheriff and a sheriff's department are 'arms of the Commonwealth of Virginia and that they, therefore, are entitled to invoke the defense of immunity from suit pursuant to the Eleventh Amendment'"); Francis v. Woody, No. 3:09cv235, 2009 WL 1442015, *4 (E.D. Va. May 22, 2009) (finding that "in Virginia, a lawsuit against a sheriff in his official capacity is actually a lawsuit against the State," and a Virginia sheriff in his official capacity is immune under the Eleventh Amendment from liability for damages and not a "person" under § 1983); Botkin v. Fisher, No. 5:08cv00058, 2009 WL 790144, *5 (W.D. Va. Mar. 25, 2009) ("In Virginia, suits against a Sheriff in his official capacity are suits against the state" and barred by the Eleventh Amendment with respect to claims for monetary damages.) (citations omitted); Davis v. Cnty. of Amherst, No. 6:07cv00017, 2008 WL 591253, *1 (W.D. Va. Mar. 3, 2008) (finding that in Virginia a sheriff and the sheriff's department are "considered a part of the State for 11th Amendment purposes," and not a "person" subject to liability for damages under § 1983); Carpenter v. Sheriff of Roanoke City, No. 7:05cv00667, 2006 WL 1699730, *1 (W.D. Va. June 12, 2006); Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997) (finding a suit against Virginia sheriff in his official capacity seeking monetary damages to be barred by the Eleventh Amendment); Blankenship v. Warren Cnty., 931 F. Supp. 447, 449 (W.D. Va. 1996) (finding that "the Sheriff and the Sheriff's Department [in Virginia] are arms of the state and cannot be held liable

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion, the claimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (citation omitted). While the court must accept the claimant's factual allegations as true, Hemi Group, LLC v. City of N.Y., 130 S.Ct. 983, 986–87 (2010), this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The complaint must contain sufficient facts from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8(a). With these precepts in mind, the court concludes that Lavender has failed to plead plausible claims to relief against the named defendants.

To plead plausible claims for relief under § 1983 against Johnson in her official capacity, Lavender must plead facts showing more than a *respondeat superior* relationship. Under § 1983, governmental entities are not liable under the theory of *respondeat superior* for unconstitutional conduct by their employees. See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978). Rather, to hold a governmental entity liable under § 1983, a plaintiff must prove that action pursuant to official policy or custom[4] of some nature of that entity caused the

---

for monetary damages under § 1983 because they are entitled to Eleventh Amendment immunity"). There is a countervailing argument that under the Harter v. Vernon, 101 F.3d 334 (4th Cir. 1996), four-factor test a sheriff might not be considered an arm of the state. The four factors are: "whether the state treasury will be responsible for paying any judgment[,] . . . whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of state law." Id. at 337.

[4] A policy is "a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) (internal quotation marks omitted). A custom exists when

7

constitutional tort, id., and only when that policy or custom is "the moving force of the constitutional violation" is the government entity liable, id. at 694.[5] Consequently, to plead official capacity liability, Lavender must plead facts showing that Johnson had an official policy or custom that caused the alleged John Doe defendants to subject Lavender to excessive force.

To plead claims for relief under § 1983 against Johnson in her individual capacity, once again, Lavender must plead facts that show a more than a *respondeat superior* relationship. "While a municipal liability claim based upon a particular official's attributed conduct and a supervisory liability claim against that official based upon the same conduct are not perfectly congruent, each requires proof both of the official's deliberate indifference and of a close affirmative link between his conduct and the resulting constitutional violation by a subordinate." Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997) (citation omitted). To establish supervisory liability, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered.

See Schall v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Miller v. Beam, 896 F.2d 848, 854 (4th Cir. 1990)).

Here, Lavender's pleadings are essentially boilerplate, devoid of specific facts showing that Johnson either in her official or individual capacity was deliberately indifferent to or tacitly

---

the "persistent and widespread" practices of government officials are "so permanent and well-settled as to [have] the force of law." Spell, 824 F.2d at 1386 (internal quotation marks omitted) (insertion in original).

[5] "Only where a municipality's failure to train its employees in a relevant respect evinces a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989).

authorized a particular practice that led to the single alleged use of excessive force against Lavender on March 21, 2009 by an unidentified deputy. At the hearing on the motion to dismiss, Lavender's counsel explained that Lavender was attempting to hold Johnson liable under § 1983 because after Johnson became aware of the March 21, 2009 incident, she allegedly failed to "follow through," that is, "properly investigate" the incident and that Lavender also was seeking to hold Johnson liable based on her "pattern of conduct," though he did not have "specific facts."

Counsel's explanation underscores at least two fundamental deficiencies in Lavender's complaint. First, though Johnson's alleged failure to investigate the alleged excessive use of force against Lavender possibly might serve as grist should another excessive force claim arise in the future, it could not have resulted in the constitutional deprivation Lavender alleges—the antecedent excessive use of force—and consequently is not actionable under § 1983. See Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994) (holding that "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff" is required to establish supervisory liability under § 1983) (citations omitted). Second, the acknowledgment that Lavender does not yet have "specific facts" to establish a pattern of conduct and is seeking to engage in discovery to support his allegations ignores Iqbal's admonition that Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors and discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S.Ct. at 1950. In short, Lavender's complaint falls far short of showing that Lavender is entitled to relief under § 1983 against Johnson in her individual or official capacity, and the court will dismiss those claims against her.[6]

---

[6] The named defendants also have moved to dismiss all of Lavender's claims against them because of Lavender's failure to comply with Local Rule 11(c)(1) of the Western District. That Rule provides in pertinent part that "unless otherwise directed by the court, the opposing party must file a responsive brief and such supporting documents as are appropriate within fourteen days after service . . . ." The named defendants initially filed a motion to dismiss with a supporting brief on August 10, 2011, and Lavender failed to respond. They followed up their initial motion to dismiss with a second motion to dismiss on August 31, 2011 on the ground that Lavender had not opposed their motion by responding as required by the local rule. Lavender eventually responded to the named

IV.

The named defendants also have moved to dismiss Lavender's state law claims against them on various grounds that raise arguably unresolved 11th Amendment immunity[7] and state law sovereign immunity issues.[8] Lavender filed this suit on March 18, 2011, the eve of the expiration of the two-year state statute of limitations, and he has yet to name the individuals who allegedly used excessive force against him on March 19, 2009. If he were to name and serve them now, there is authority to support the defense that his John Doe suit does not relate back and that the statute limitations has run. See Cornett v. Weisenburger, No. 1:05cv00101, 2007 WL 321399, *3–6 (W.D. Va. Jan. 31, 2007) (finding that a plaintiff may not amend his complaint to name actual persons in place of unknown John Doe defendants where, as lack of knowledge of the proper party is not a mistake under Rule 15(c), the amendment would not relate back to the original complaint and thus that any new claim against those actual persons would be time barred) (relying on W. Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1201 (4th Cir. 1989)); Lochner v. Bergman & Beving AB, 457 F.3d 363, 365–66 (4th Cir. 2006)). If this were found to be the case, the court would then decline to exercise supplemental jurisdiction

---

defendants' initial August 10, 2011 motion to dismiss on October 3, 2011, although he never addressed his failure to comply with the local rule. At oral argument, Lavender's counsel candidly acknowledged he had no excuse. Consequently, he has shown nothing to excuse his noncompliance. Local Rule 11(c), however, does not prescribe a precise remedy for noncompliance, and the court imposes none at this juncture.

[7] The 11th amendment precludes federal courts from hearing state law claims against states, state agencies, and state officials acting in their official capacities. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984); Equity in Athletics, Inc. v. Department of Educ., 639 F.3d 91, 107 (4th Cir. 2011). If sheriffs in Virginia were found to be state officials or Sheriff's Offices state offices for 11th Amendment purposes, then the court would lack jurisdiction to hear an official capacity state law claim against the Sheriff or any state law claim whatsoever against the Sheriff's Office.

[8] There is a split of authority as to the liability of a sheriff under Virginia law for the acts of her deputies. See, e.g., Bell v. City of Roanoke Sheriff's Office, No. 7:09cv00214, 2009 WL 5083459, at *5 (W.D. Va. Dec. 23, 2009) (finding no abrogation of the traditional rule that sheriffs are liable for the actions of their deputies) (relying on Moore's Adm'r v. Dawney & Another, Adm'rs of Bell, 13 Va. 127, 132 (1808)). But see Watson v. Knight, No. CL02-523, 2003 WL 21661892, *1 (Va. Cir. Ct. 2003) (holding a suit against a sheriff for the intentional torts of his deputies to be an allegation of negligence on the part of the sheriff, and thus barred by sovereign immunity).

over Lavender's remaining state law claim against the named defendants. Accordingly, the court will hold the named defendants' motion to dismiss that claim under advisement briefly for a clarification of the viability of that claim.

V.

For the reasons stated, the court dismisses Lavender's § 1983 claims against the Roanoke City Sheriff's Office and Sheriff Johnson in her official and individual capacities. The court holds under advisement the named defendants' motion to dismiss Lavender's state law claim against them and directs Lavender to explain within fourteen days why the court should not dismiss his claims against the un-served defendants without prejudice pursuant to Rule 4(m) and then decline to exercise supplemental jurisdiction over his remaining purely state law claims against the named defendants.

**Enter**: November 30, 2011.

UNITED STATES DISTRICT JUDGE